# LIMITED LIABILITY COMPANY

# OPERATING AGREEMENT FOR SUITT-RKC, LLC, I

THIS AGREEMENT made and entered into this 13th day of March, 2003, by and between Suitt Construction Co. Inc., a South Carolina Corporation (hereinafter "Suitt") and RKC Construction, Inc., a Florida Corporation (hereinafter "RKC").

WITNESSETH:

WHEREAS, CKT-White Harbour Island, LLC (hereinafter "Owner") intends to construct an Apartment Project consisting of 378 rental apartment units (hereinafter the "Work" or the "Project") at 700 S. Harbour Island Boulevard, Tampa, Florida (hereinafter the "Site").

WHEREAS, the parties hereto have agreed to jointly prepare and submit a bid or proposal, and if the proposal is accepted, form a Florida Limited Liability Company to be known as Suitt-RKC, LLC, I (hereinafter "LLC") enter into and perform a Construction Contract with the Owner for the Project (hereinafter referred to as the "Construction Contract").

WHEREAS, the parties desire to enter into an Operating Agreement in order to define between themselves their respective interests and liabilities in connection with the performance of such Construction Contract.

NOW, THEREFORE, for and in consideration of the mutual promises and covenants set forth in this Agreement, Suitt and RKC hereby agree that this Agreement contemplates only the furnishing and the performance of the Work, including all labor, materials, equipment, working capital and all other things necessary for the complete performance of the Construction Contract, that Suitt and RKC are not making a permanent partnership arrangement to bid on or to undertake any contracts other than the Construction Contract and that nothing in this Agreement shall be construed as a limitation of the powers or of the right of either Suitt or RKC to carry on their separate business for their sole benefit except that Suitt and RKC shall fully cooperate with each other according to the provisions and spirit hereof in the performance of the Construction Contract.

Suitt and RKC each further agree not to compete against each other for additional work that may be requested in the future by the Owner at the Site unless discussed with, and mutually approved by both Suitt and RKC.

To carry out the purpose of the LLC, Suitt and RKC further mutually agree as follows:

1.   NAME AND SCOPE OF LLC

1.1   The Construction Contract shall be entered into in the name of the LLC. Such Construction Contract shall be carried out and performed by Suitt-RKC, LLC, I ("LLC) and all money, equipment, materials, supplies and other property acquired by the LLC shall be held jointly in that name.

1.2   No payment shall be made by the LLC to any of the parties hereto in reimbursement of expenses incurred by such parties in connection with the pursuit and securing the award of the Construction Contract, unless otherwise agreed in writing.

1.3    It is the intent of the parties hereto that the Construction Contract to be submitted to the Owner shall be satisfactory and acceptable to both parties. Upon request of Suitt, RKC shall cause all applicable contracts held by RKC relative to the Project to be assigned to the LLC.


2.    PROPORTIONATE SHARES

2.1    Except as otherwise provided in Paragraphs (4.2) and (4.3) hereof, the interest of the parties in any profits and assets and their respective shares in any losses and liabilities that may result from the performance of such Construction Contract, shall be as follows:

| Suitt | 75% |
| RKC | 25% |

with such percentages being referred to hereinafter as the respective party's Proportionate Share.

2.2    It is the intention of this Agreement, and the parties hereby agree that in the event of any losses arising out of, or resulting from the performance of the Construction Contract, each party hereto shall assume and pay its Proportionate Share of such losses. If for any reason any one of the parties hereto sustains any liabilities or is required to pay any losses arising out of or directly connected with the performance of such Construction Contract, or the execution of any surety bonds or indemnity agreements in connection therewith, which are in excess of its Proportionate Share in the losses of the LLC, the other party or parties shall reimburse such party in such amount or amounts as the losses paid and liabilities assumed by such party exceed its Proportionate Share in the total losses of the LLC, so that each member of the LLC will then have paid its Proportionate Share of such losses; and to that end each of the parties hereto agrees to indemnify the other party against and to hold it harmless from any and all losses of said LLC that are in excess of such party's Proportionate Share; provided, however, that the provisions of this sub-paragraph shall be limited to losses that are directly connected with or arise out of the performance of the Construction Contract and the execution of any bonds or indemnity agreements in connection therewith, and shall not relate to or include any speculative, prospective, incidental, indirect, or consequential losses that may be sustained or suffered by any of the parties hereto.

2.3    The parties shall, from time to time, execute such applications for bonds and indemnity agreements, and other documents and papers as may be necessary in connection with the submission of the bid for and the performance of such Construction Contract; provided, however, that the liability of each of the parties hereto under any agreements to indemnify a surety company or surety companies shall be equal to the Proportionate Share of each of the parties in the LLC.

2.4    Each party shall provide such bid and performance and payment bonds as may be required for the bid proposal and/or Construction Contract to the extent of each parties' Proportionate Share in the LLC, unless otherwise mutually agreed. Such bonds shall be in the form of "co-surety bonds" or as otherwise required by the Owner, and/or acceptable to the other party.                                      75% $1,155,000.00
                                          $1,540,000  DK                    25% $385,000.00

2.5    The "As Sold" Stated Project Fee of $ _____ shall be shared in accordance with the Parties' Proportionate Interests. The first $200,000 of any Project savings in excess of the "As Sold" Stated Project Fee shall be given to RKC. Thereafter, any further Project savings in excess of the "As Sold" Stated Project Fee shall be shared equally between the Parties.    Then 50/50

3.    MANAGEMENT OF LLC

   3.1    Authority to act for and bind the parties to the LLC in connection with all or any part of the performance of said Construction Contract shall be vested in a Management Committee, which may, from time to time delegate all or any part of such authority to one of the parties and/or to any individual or individuals upon unanimous consent of the parties. Neither the Management Committee nor any party hereto shall have the authority to act for or bind any other party except in connection with the performance of the Construction Contract. Actions and decisions of the Management Committee shall be by unanimous vote. In the event a unanimous vote cannot be reached, the matter shall be resolved in accordance with the dispute resolution provisions pursuant to Paragraphs 3.7 and 3.8. The parties hereby designate the following individuals to represent them on the Management Committee:

| PARTY | REPRESENTATIVE |
|---|---|
| Suitt Construction Company, Inc.<br>151 Southhall Lane, Suite 210<br>Maitland, Florida 32751 | Dana Emberton<br>Representative<br><br>Don Nickell<br>Alternate |
| RKC Construction, Inc.<br>270 South North Lake Boulevard<br>Suite 1008<br>Altamonte Springs, Florida 32701 | Michael Knadle<br>Representative<br><br>Joe Reeves<br>Alternate |

Such designations may be changed by any party at any time upon written notice to the other parties by the Chief Executive Officer of such party.

   3.2    Suitt is hereby designated as the Managing Party, subject, however, to the superior authority and control of the Management Committee. The Managing Party shall appoint the Project Executive through whom the Managing Party shall have direct charge over and supervision of all operational matters necessary to and connected with the performance of the Construction Contract, except as otherwise provided herein. In the event of a deadlock, the Managing Party shall resolve the ssue for the time being so that the work may be prosecuted to completion, subject to a reservation of rights by the other party. The decision of the Managing Party shall not prejudice the rights of the other party to dispute such decision as provided by )aragraph 3.8.

   3.3    Any delegation of authority to any individual or party may be revoked by majority vote of all the parties; rovided, however, that if the authority of the individual serving as Project Executive is revoked, the Managing Party shall have 1e right and obligation to appoint another individual to serve in that capacity who is acceptable to the parties hereto.

3.4     Decisions (or, at their option, the establishment of Guidelines to be followed by the Managing Party) regarding the following matters shall be made upon the unanimous vote of the Management Committee:

a.)     Significant financial matters such as borrowing, debt guarantees, lease commitments and the investment policy with respect to funds of the LLC.

b.)     The sale of LLC assets; including the terms of such sale and the agent therefor, if any.

c.)     Settlements, in excess of a threshold amount set by the Management Committee, of claims or litigation by or against the LLC.

d.)     Transactions between any Member and the LLC, including agreements, if any, concerning rates of payment or reimbursement for employees, equipment, temporary or permanent materials, or management, data processing and/or other services.

3.5     The Managing Party shall be designated as the "tax matters partner" (as said term is used in sections 6221 through 6232 of the Internal Revenue Code) for the LLC.

3.6     Management Committee meetings shall be held as needed, but in no event less frequently than once every three months. Job progress reports, a recently updated construction schedule, and the most recent copies of the financial reports described in Paragraph 5.2 shall be presented and reviewed by the parties at such meetings. Any other matters of interest to the LLC may be investigated at, or as a result of, such meetings. Any party may, upon written notice seven (7) days in advance of same, call a Special Meeting of the Management Committee.

3.7     Notwithstanding the provisions of Paragraph 3.1, if any dispute between the parties affects or threatens the orderly or timely progress of the Work, the LLC shall proceed with the Work as directed by the Managing Party in writing, whose decision with respect to matters affecting the prosecution of the Work shall be final and binding unless an objecting party provides written notice of its objections within twenty (20) days after receipt of the Managing Party's written directive. In no event shall any dispute be permitted to delay the progress of the Work.

3.8     In the event of any dispute, including those which have been the subject of a formal objection pursuant to Paragraph 3.7, the parties shall exhaust every effort to settle or dispose of same. If, after the Chief Executive Officers of all of the parties have met on no less than two separate occasions in an attempt to settle or dispose of such dispute, then such dispute shall be settled by arbitration. The arbitration shall be administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Venue for any such arbitration proceeding shall be Orange County, Florida. Further, in any such arbitration proceeding, the prevailing party shall be entitled to recover their reasonable attorneys fees, costs, and expenses incurred in such arbitration. The parties specifically confer upon the arbitrator(s) the power, and the duty, to determine who was the prevailing party, in the arbitration only, and also to assess the amount of attorneys fees, costs, and expenses to be assessed against the losing party, for the arbitration proceedings, only. With respect to any trial or appellate proceedings, the prevailing party shall also be entitled to recover their reasonable attorneys fees, costs, and expenses to be set by a court of competent jurisdiction in Orange County, Florida.

4.      CAPITAL CONTRIBUTIONS AND DEFAULT

4.1     The Management Committee shall from time to time determine the amount of working capital required to carry out and perform the Construction Contract, and each party shall contribute its Proportionate Share of such working capital whenever requested to do so. Such contributions shall be made within ten (10) days after request therefore.

4.2     If any party fails or is unable to provide its proportionate share of the funds required by the LLC, the interest of that party in the return of investment and profits of the LLC shall be decreased to the proportion that the amount actually provided by it bears to the total amount of the funds provided by all parties, and the interest of any party which may have contributed more than its proportionate share of such funds shall be increased in the same proportion. Nothing contained herein shall increase or decrease the proportionate liability of the parties hereto for losses suffered or sustained by the LLC. The amount unpaid, plus simple interest which shall be charged at the rate per year of 3% above the prime rate of interest announced in the "Money Rates" section of The Wall Street Journal (but not exceeding the maximum allowed by law), shall continue to be a charge against the defaulting party until repayment. It is understood that the subsequent payment of working capital in arrears by any party hereto, which has failed or refused or was unable to contribute its appropriate share of the working capital and funds, shall not cure the default of such party, except by the express written consent of the other parties hereto not so in default.

Reduction in a defaulting party's share of the profits and increases in the share of the other parties shall be calculated as of the time of each default in contributions and as of the time of excess contributions by other parties. The profit shares as so adjusted may be further adjusted to reflect any subsequent default or excess contributions.

The defaulting party shall have no representative on the Management Committee and shall have no right to participate in the affairs of the LLC until either (1) all of the defaulted contributions and default interest have been paid to the LLC or (2) distributions to the non-defaulting parties have included repayment of all of the excess contributions and payment of all default interest.

4.3     If any party hereto shall dissolve, become bankrupt, or shall file a voluntary petition in bankruptcy, the remaining party shall do all things necessary to wind up the affairs of the LLC, including the completion of the Construction Contract, the collection of all monies and property due to the LLC, the payment of all debts and liabilities of the LLC, and the distribution of its assets. Such dissolved or bankrupt party shall have no further voice in the performance of the Construction Contract or in the management of the LLC, nor shall any trustee, legal representative, or successor of any type. The participation of such dissolved or bankrupt party, or its representative, in the profits of the LLC shall be limited to that Net Proportion (contributions of defaulting party minus default interest charges) which the contributions of such party to the working capital of the LLC bears to the total contributions to such working capital made by all of the parties, but such dissolved or bankrupt party and its representatives shall be charged with and shall be liable for its full share, as fixed in Section 2 hereof, of any and all losses that may be suffered by the LLC under the Construction Contract, or any additions or supplements thereto or modifications thereof.

5.     BANKING AND ACCOUNTING

5.1     All contributions of working capital made by the parties hereto, and all other funds received by the LLC in connection with the performance of the Construction Contract, shall be deposited in such bank or banks as the parties may designate in separate bank account (s) bearing the name of this LLC. Withdrawals of such funds may be made in such form and by such persons as the Management Committee may from time to time direct. All persons authorized to draw against the funds of the LLC shall be bonded in such company or companies and in such amounts as the parties shall determine, unless the parties waive the bonding requirement in writing.

5.2     Separate books of account of the transactions of the LLC shall be kept in accordance with generally accepted accounting principles. Such books, and all records of the LLC, shall be available for inspection by any party at any reasonable time. Periodic audits shall be made of such books at such times and by such persons as the parties may direct, with a certified audit performed annually (unless otherwise agreed, in writing, by the parties hereto) and copies of the audit reports shall be furnished to each party. Monthly financial statements and cost reports shall be prepared, with Contract profit reported on a

Percentage-of-Completion method. No less frequently than every three months forecasts of cash flow, final contract revenue, cost and profit and reports setting forth the status of change requests, shall be prepared and copies furnished to each party. Upon completion of the Construction Contract, a final audit shall be made and copies of such audit report shall be furnished to each of the parties.

6.     MISCELLANEOUS

6.1     The parties may determine from time to time during the course of this Agreement that some of the assets held and acquired by the LLC may be divided among or paid to the parties in accordance with their Proportionate Shares. Upon the completion of the Construction Contract, the assets held and acquired by the LLC shall be divided between the parties and the profits or losses accrued or financial reserves made in the performance of the Construction Contract shall be divided between or paid by the parties, as the case may be, in accordance with the terms of this Agreement; provided, however, that if claims of any nature or legal action of any type are brought against the LLC or any of the parties at any time after such distribution by any third party or parties not signatory to this Agreement and such claims and/or legal action relate to or arise out of this Agreement, the performance of the Construction Contract and/or the work product thereof, this Agreement shall be considered to have remained in full force and effect and the rights and obligations of the parties hereto with respect to such matters shall be determined by this Agreement, the passage of time notwithstanding.

6.2     The interests and rights of each party in this LLC shall not be transferable or assignable, except that any party may assign its share in any money to be received by it from the LLC for the purpose of obtaining a loan or loans from any bank or other lending agency.

6.3     The scope and limits of insurance which shall be obtained by the Managing Party on behalf of the LLC, shall be as mutually agreed by the parties. The insurance program shall not necessarily be limited by the minimum requirements set forth in the Construction Contract with the Owner and shall clearly define what liabilities, if any, are to be insured against with respect to the LLC.

6.4     This Agreement shall be construed and governed by the laws of Florida.

6.5     The following Attachments are attached hereto and made a part hereof:

   A.     Policy Statement on Business Conduct

   B.     Member Transactions with the LLC (if applicable) such as Equipment Sales/rentals, Home Office Charges, Management Fees, etc.

   C.     Accounting

6.6     PIRATING EMPLOYEES - Each Member of the LLC agrees that upon entering this Agreement, and for a period of not less than one (1) year following the Final Completion of the Construction Agreement, they will refrain from making offers, enticements and/or inducements to cause employees of the opposite Member to leave the employ of that Member and enter to employment with the other Member and/or any subsidiary of the Member making such offers, enticements and/or inducements without the consent of the appropriate Member. Notwithstanding the above, in the event of a default by one of the Member, the non-defaulting Member may employ the defaulting Member's employees for the completion of the Project without limiting the liabilities of the defaulting Member hereunder.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers or agents on the date first written above.

ATTEST: _____

ATTEST: _____

Suitt Construction Co., Inc. (LLC Member)

By: _____

Its: _Senior VP_

RKC Construction, Inc. (LLC Member)

By: _____

Its: _____

## ATTACHMENT A

1.      The use of the funds or assets of the LLC for any unlawful purpose, including any political or commercial bribery, is strictly prohibited.

2.      No unrecorded fund shall be established or maintained for any purpose. All transactions, receipts, expenditures, assets and liabilities shall be recorded on the books of the LLC at all times, unless specifically exempted by an accounting policy which is consistent with generally accepted accounting principles.

3.      No false entry that obscures the purposes of the underlying transaction shall be made in the books and records of the LLC for any reason.

4.      No payment on behalf of the LLC shall be approved or made with the intention or understanding that any part of such payment is to be used for any unlawful purpose or purpose other than that described by the records supporting the payment.

5.      No employee will prepare and send out an invoice reflecting a sales price that is in excess of the actual negotiated purchase price.

6.      Non-cash gifts and entertainment may be given to persons with whom the LLC has business dealings, or accepted by Member Company's employees, when they are (I) consistent with locally accepted business practices, (ii) so limited in value that they are not an attempt to buy the recipient's favor, and (iii) such that full public disclosure would not embarrass the LLC or the recipient.

7.      Agreements with agents, sales representatives and consultants shall be in writing, shall clearly and accurately set fourth the actual services to be performed, the basis for earning the commission or fee involved and the applicable rate of fee. Payments must be reasonable in amount, not excessive in light of practice in the trade and commensurate with the value of services rendered. The agent, sales representative or consultant must be advised that the agreement may be publicly disclosed and must agree to such disclosure. In addition, all such agreements shall contain clauses whereby the agent agrees not to make any of the questionable or illegal payments described herein.

3.      No payments to political parties or candidates for public office may be made.

## ATTACHMENT B

EQUIPMENT AND MATERIALS - All equipment and materials required for the Project shall be purchased and owned by the LLC, or may be obtained on a rental basis, if it appears beneficial to the LLC. The LLC may buy, sell, or lease equipment, with proper approval, at any time, but at prices and upon terms as shall be agreed upon between the Members. In the discretion of the Management Committee, either Member may furnish equipment and materials to the LLC at reasonable rates, no higher than local market rates.

## ATTACHMENT C

ACCOUNTING - Suitt assumes the responsibility of maintaining an accurate account of all job costs and records in a manner satisfactory to each member of the LLC and for providing computer services required by the LLC for the Project. For the accounting and computer services provided hereunder, Suitt shall be entitled to $45,000 Dollars ($2813) per month. The following general basic policies will be adhered to:

(1)     All field costs incurred on behalf of the LLC shall be charged to the Project as COST OF THE WORK in accordance with the provisions of the Construction Contract.

(2)     A field office for the LLC shall be established and maintained at the jobsite and all customary job records shall be maintained as separate LLC accounts and records at the Maitland, Florida office of Suitt. Authorized Member personnel or accountants shall have the right to inspect, audit or review the LLC accounts and records at reasonable times.

(3)     Neither Member shall borrow money on behalf of the other Member or on behalf of the LLC without the express written consent of the other Member.

(4)     To the extent that the risks or potential liabilities are not adequately covered by the Contractor Controlled Insurance Program for the Project, each Member shall effect and maintain its own insurance to protect itself from claims under the applicable worker's compensation laws, claims for damages because of bodily injury including personal injury, sickness or disease, or death of any of its employees and from claims for damages because of injury to or destruction of tangible property including loss of use resulting therefrom. All insurance required by the Construction Contract, and payment and/or performance bonds required by the Construction Contract, shall be procured by and in the name of the LLC and shall be considered as part of the costs of completing the Construction Contract.   Insurance required by the Construction Contract shall be endorsed to waive carriers rights of subrogation in favor of the LLC.

(5)     In the event that surety bonds are required by the Owner, Suitt will coordinate the placement thereof with RKC.  Suitt and RKC will furnish bonding in the proportionate shares stated in Article 2 of the Operating Agreement. The cost of the bonds shall be reimbursed by the Owner.

(6)     All books of record and account of the LLC shall be maintained on a calendar year basis, and may be audited at the end of each calendar year at the request of any Member, and at Final Completion by a certified public accounting firm selected by the Management Committee, it being hereby agreed that the selected CPA firm is Ernst & Young, LLP, and the cost of such audits shall be charged to the LLC. Within ninety (90) days after the end of each calendar year, the selected certified public accountant shall furnish to each Member a balance sheet as of the end of such year; a statement of income for the year and for the life-to-date of the LLC; a statement of each Member's equity for the year and for the life-to-date of the LLC; a statement of cash flow for the year and for the life-to-date of the LLC; appropriate notes to such financial statements; and a certified opinion of the financial statements signed by the certified public accountant. The costs to prepare the Annual and Final Project Audits are chargeable to the LLC. Either party shall have the right to audit the books of record and account of the LLC at all reasonable times. However, it is not the intent of the Member  to automatically commission such audits.

7)     The certified financial statements shall be prepared using the cost-to-cost percentage-of-completion method of accounting.

8)     At the end of each calendar year, and at the final completion of the Project, there shall be prepared and filed on behalf of the LLC tax returns as shall be required for Limited Liability Company under the applicable federal, state and local

laws and/or regulations. All such tax returns shall be prepared using the percentage of completion method of accounting, except for interest income, which shall be reported currently. The costs to prepare tax returns are chargeable to the LLC.

(9)      Travel and entertainment expenses of Salaried Project Personnel, staff assistants and jobsite personnel while traveling in connection with the discharge of their duties in connection with the Work shall be paid or reimbursed as a Cost of the Work.

(10)     Except, as authorized by the Management Committee, no salaries of officers or home office personnel will be charged to the job. The only salaries, wages or hourly charges chargeable to the Construction Contract are those of the Salaried Project Personnel and persons who are employees of the LLC directly employed on the jobsite, unless such expenses are negotiated into the Cost of the Work or unless otherwise agreed by the Members. No home office overhead, home office personnel, or other such indirect costs shall be charged to the project by either Member, unless such charges are by lump sum or fixed unit rates, agreed by all parties, as per Exhibit 1 attached hereto.

(11)     Monthly financial statements shall be prepared, with contract profit reported on a cost-to-cost percentage-of-completion method. Contract status reports including billings, cost reports, cost data and final profit projections, will be prepared and presented to all parties on a monthly basis. Upon completion of the Construction Contract, a final accounting shall be made and copies of such accounting shall be furnished to each of the parties.

    A.      Originals of all subcontracts and purchase orders together with all other necessary accounting and financial records relating thereto shall be maintained at the jobsite and at the Maitland, Florida office of Suitt. By regular reporting, the management committee shall be notified of all major (in excess of $2500) capital expenditures as they occur.

(12)     ADMINISTRATION - It is the intention of the Members that the administrative load to be assumed by the home office of each of the Members shall be in proportion to each Member's respective proportionate share as nearly as possible.

(13)     FINAL ACCOUNTING - Upon Final Completion of the Construction Contract, a true and correct accounting shall be made of all expenses, accounts, vouchers, records, and data relating to the Construction Contract.

(14)     FINAL RECORDS - To the extent that records must be kept after completion of the Construction Contract, pursuant to law, such shall be kept at a place the Management Committee determines, and the cost thereof shall be borne by the Members in the proportions set forth in Article 2 of the Operating Agreement.

15)      SELF-PERFORMANCE - The LLC may from time to time contract with Suitt or RKC to perform a portion of the work not otherwise being performed directly by the LLC. Amounts received by Suitt or RKC acting in its separate corporate capacity, and not as a Member, shall not apply against any distributions or amounts to which such party would otherwise be entitled under this Agreement. The Project Executive shall not knowingly enter into any agreement or other arrangement for the furnishing to or by the LLC of goods, equipment, materials or services with any individual, corporation, partnership, joint venture or other entity related to or affiliated with either Member unless such agreement or arrangement has been approved by the Management Committee after the nature of the relationship or affiliation has been disclosed. For purposes of this paragraph, the following entities shall be deemed to be "related to or affiliated with" a Member:

    (1)      Any entity owning directly or indirectly more than five (5%) percent of the issued and outstanding stock or more than a five (5%) percent beneficial interest in either Member.

(2)     Any entity where more than five (5%) percent of its issued and outstanding stock or beneficial interest is owned directly or indirectly by either Member.

Exhibit 1

Suitt Construction Co., Inc. home office personnel

Name:                                                  Val Hanson

Task:                                                  Vice President – Operations Executive

Lump sum or unit price to perform task:   Thirteen Thousand six Hundred fifty dollars ($13,650)

Cap on task costs:                              Thirteen Thousand six Hundred fifty dollars ($13,650)

RKC Construction, Inc. home office personnel

Name:                                                  Phillip G. Baron

Task:                                                  Executive Vice President

Lump sum or unit price to perform task:   Thirteen Thousand six Hundred fifty dollars ($13,650)

Cap on task costs:                              Thirteen Thousand six Hundred fifty dollars ($13,650)

# ASSIGNMENT OF PARKCREST BUILDING AND PARKING GARAGE CONTRACT

THIS ASSIGNMENT is made and entered into as of the 23 day of April, 2003, by RKC Construction, Inc. (the "Assignor") to SUITT-RKC, LLC, I (the "Assignee").

## WITNESSETH:

WHEREAS, Assignor has performed services for CKT-WHITE HARBOUR ISLAND, LLC (the " Owner") with regard to the construction of Owner' s Parkcrest at Harbour Island Rental Apartment Project – Building and Parking Garage (the " Project"); and

WHEREAS, the Assignee has requested Assignor to assign certain contracts awarded by Owner to Assignor so as to continue such contractor services on the Project directly by the Assignee.

NOW, THEREFORE, in consideration of the obligations arising hereunder, the parties agree as follows:

## ARTICLE I
### Granting Clause

Assignor does hereby grant, bargain, sell, transfer, convey and assign to Assignee, with full recourse all of the right, title, interest and estate of Assignor in, to and under that certain Contract identified below, a copy of which is attached hereto, and all retainage, receivables, documents, instruments, and other matters relating thereto (herein referred to as the "Assigned Contract"), subject to the terms and conditions herein.

Assignee shall reimburse Assignor for all costs reasonably and properly incurred with regard to the Assigned Contract less all moneys received by Owner on account thereof.   . Assignor shall provide Assignee with a copy of the Project Balance Sheet.  All future revenues, profits, obligations and liabilities under the Assigned Contract shall flow to Assignee.

## ARTICLE II
### Liability of Assignee with Respect to Assigned Subcontracts

Assignor represents and warrants that as of the date hereof neither the Assignor nor the Owner is in default under the Assigned Contract.  Owner represents and warrants that as of the date hereof, the Owner is in default under the Assigned Contract, and to the best of Owner' s knowledge, Assignor is not in default under the Assigned Contract.  Assignor and Assignee agree that Assignee assumes all of the remaining obligations and  duties of the Assignor under or with respect to the Assigned Contracts.

Assignee shall inspect previous Work under the Foundations Contract and verify the proper performance of all Work performed thereunder and shall accept sole source responsibility as Contractor for the construction activity for the combined Building, Garage and Foundations

Project as a whole.  Owner shall be entitled to look solely to Assignee for all Work performed under the Project, whether such Work was performed before or after the Assignment of the Assigned Contract.

ARTICLE III

Consent of Owner

The Owner, by its agreement to this Assignment, shall perform its obligations under the Assigned Contract for the benefit of Assignee and shall look solely to Assignee with regard to any and all obligations and liabilities previously undertaken by Assignor under the Assigned Contract.

IN WITNESS WHEREOF, the Parties have executed and delivered this Assignment as of the date first stated above.

WITNESSES:

_____

WITNESSES:

_____

ASSIGNOR:
RKC Construction, Inc.

By: _____
Its: _____

ASSIGNEE:
SUITT-RKC, LLC, I.

By: _____
Its: _____

OWNER CONSENT TO ASSIGNMENT

A.   The Contract is identified as that contract between the Assignor and Owner dated October 11, 2002, for the **Building and Parking Garage.**

B.   Owner hereby consents to the foregoing assignment of the Assigned Contract from RKC Construction, Inc. as Assignor to SUITT-RKC, LLC, I as Assignee.

WITNESS:

_____

OWNER
CKT-WHITE HARBOUR ISLAND, LLC
BY: CKT - PARKCREST AT HARBOUR ISLAND, LLC

By: _____
Its: _____

# CHANGE ORDER

*AIA Document G701*

Distribution to:

| | |
|---|---|
| Owner | ☐ |
| Architect | ☐ |
| Contractor | ☐ |
| Field | ☐ |
| Other | ☐ |

ROUTED TO:
3A
3J
RS
BL
Orig: FIRE

| | | |
|---|---|---|
| **PROJECT:** (name, address) | **PARKCREST AT HARBOUR ISLAND RENTAL APARTMENTS FOUNDATIONS** 700 S. Harbour Island Blvd. Harbour Island Dr. & Franklin St. Brdg Tampa, FL 33602 | **CHANGE ORDER NUMBER:** Two (2) **DATE:** May 22, 2003 |
| **TO CONTRACTOR:** (name, address) | SUITT-RKC, LLC, I 151 Southhall Lane, Suite 210 Maitland, FL 32751 | **ARCHITECT'S PROJECT NO:** 0983 **CONTRACT DATE:** October 11, 2002 |
| | | **CONTRACT FOR:** BUILDING, PARKING GARAGE AND FOUNDATIONS |

The Contract is changed as follows:

The Contract between CKT-White Harbour Island, L.L.C. dated October 11, 2002 and RKC Construction, Inc. and assigned to SUITT-RKC, LLC, I for the construction of the Building and Parking Garage of the Project, including the Scope of Work defined therein, is hereby merged into and made a part of this Contract for the Foundations. SUITT-RKC, LLC, I, as Contractor, shall inspect previous work under the Foundations Contract and verify the proper performance of all work performed thereunder, and shall accept sole source responsibility as Contractor for the construction activity for the combined Building, Garage and Foundations Project as a whole.

**Not Valid until signed by the Owner, Architect and Contractor.**

| | |
|---|---|
| The Original (Contract Sum) (Guaranteed Maximum Price) was . . . . . . . . . . | $4,358,607.00 |
| Net change by previously authorized Change Orders . . . . . . . . . . . . . . . . . . | $0.00 |
| The (Contract Sum) (Guaranteed Maximum Price) will be (increased) (decreased) (unchanged) by this Change Order in the amount of . . . . . . . . . . . | $30,641,393.00 |
| The new (Contract Sum) (Guaranteed Maximum Price) including this Change Order will be . . . | $35,000,000.00 |

The Contract Time will be (increased) (decreased) (unchanged) by zero ( 0 ) days.
The date of Substantial Completion as of the date of this Change Order therefore is unchanged.

Note: This summary does not reflect changes in the Contract Sum, Contract Time or Guaranteed Maximum Price which have been authorized by Construction Change Directive.

| Forum Architecture & Interior Design, Inc | SUITT-RKC, LLC, I | CKT - White Harbour Island, L.L.C. |
|---|---|---|
| Architect | Contractor | Owner By: CKT-Parcrest at Harbour Island LLC |
| 745 Orienta Ave., Suite 1121 | 151 Southhall Lane, Suite 210 | 201 East Kennedy Blvd., Suite 950 |
| Address | Address | Address |
| Altamonte Springs, FL 32701 | Maitland, FL 32751 | Tampa, FL 33602 |
| By: Alan Weill | By: Michael D. Knadle, President | By: Cindy Kroft Taylor |
| Date: 5/22/03 | Date: 5/22/03 | Date: 5/22/03 |

AIA DOCUMENT G701 . CHANGE ORDER . 1988 EDITION . AIA ® . © 1987 . THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006



# CHANGE ORDER

*AIA Document G701*

Distribution to:

| | |
|---|---|
| Owner | ☐ |
| Architect | ☐ |
| Contractor | ☐ |
| Field | ☐ |
| Other | ☐ |

**PROJECT:** PARKCREST AT HARBOUR ISLAND
(name, address) **RENTAL APARTMENTS**
**BUILDING AND PARKING GARAGE**
700 S. Harbour Island Blvd.
Harbour Island Dr. & Franklin St. Brdg
Tampa, FL 33602

**CHANGE ORDER NUMBER:** Two (2)

**DATE:** May 22, 2003

**TO CONTRACTOR:**
(name, address) SUITT-RKC, LLC, I
151 Southhall Lane, Suite 210
Maitland, FL 32751

**ARCHITECT'S PROJECT NO:** 0983

**CONTRACT DATE:** October 11, 2002

**CONTRACT FOR:** BUILDING AND PARKING GARAGE

The Contract is changed as follows:

The entire Contract entitled "Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum", AIA Document A101-1997, is hereby cancelled and voided in its entirety.

**Not Valid until signed by the Owner, Architect and Contractor.**

| | |
|---|---|
| The Original (Contract Sum) (~~Guaranteed Maximum Price~~) was . . . . . . . . . . | $30,641,393.00 |
| Net change by previously authorized Change Orders . . . . . . . . . . . . . . . . . . | $0.00 |
| The (Contract Sum) (~~Guaranteed Maximum Price~~) will be (~~increased~~) (decreased) | |
| (~~unchanged~~) by this Change Order in the amount of . . . . . . . . . . . | ($30,641,393.00) |
| The new (Contract Sum) (~~Guaranteed Maximum Price~~) including this Change Order will be . . . | $0.00 |

The Contract Time will be (~~increased~~) (~~decreased~~) (unchanged) by zero ( 0 ) days.
The date of Substantial Completion as of the date of this Change Order therefore is unchanged.

Note:    This summary does not reflect changes in the Contract Sum, Contract Time or Guaranteed Maximum Price which have been authorized by Construction Change Directive.

| Forum Architecture & Interior Design, Inc | SUITT-RKC, LLC, I | CKT - White Harbour Island, L.L.C. |
|---|---|---|
| Architect | Contractor | Owner *by: CKT Parkcrest at Harbour Island, L* |
| 745 Orienta Ave., Suite 1121 | 151 Southhall Lane, Suite 210 | 201 East Kennedy Blvd., Suite 950 |
| Address | Address | Address |
| Altamonte Springs, FL 32701 | Maitland, FL 32751 | Tampa, FL 33602 |
| By: *Alan Wolfe* | By: Michael D. Knadle, President | By: *Cindy Knott Taylor* |
| Date: *5/22/03* | Date: *5/22/03* | Date: *5/22/03* |

AIA DOCUMENT G701 . CHANGE ORDER . 1987 EDITION . AIA ® . © 1987 . THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006

RKC